IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ERASMO REYES, et al., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | NO. V-03-128 |
| | § | |
| EZCORP, INC. AND TEXAS EZPAWN, | § | JURY TRIAL DEMANDED |
| L.P., | § | |
| | § | COLLECTIVE ACTION |
| Defendant. | § | PURSUANT TO 29 U.S.C. § 216(b) |
| | § | |
| | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants, EZCORP, Inc. and Texas EZPAWN, L.P., move under Rule 56 for summary judgment on plaintiffs' claims for overtime wages under the Fair Labor Standards Act (FLSA) and respectfully show as follows:

### BACKGROUND

I.    Status of This Lawsuit

The original plaintiff, Erasmo Reyes, filed this lawsuit on October 31, 2003, alleging that the defendants misclassified assistant store managers (ASMs) as exempt in violation of the FLSA. *See Plaintiff's Amended Complaint at ¶ 21.* The plaintiff seeks to make this case a collective action for all ASMs working in EZPAWN stores. *Id at ¶ 7.* The plaintiff agreed to limit the scope of the collective action to the EZPAWN stores in Texas, and the defendants agreed to allow notice to those ASMs, although the parties disagreed on the form of notice. The parties have conducted discovery during the approximately twenty months that this lawsuit has been pending. This court resolved the issue of the form of notice and authorized the plaintiff to send notice and an opportunity to opt-in to this lawsuit under the provisions of the FLSA from

May 1, 2005 to June 15, 2005. *See Docket Number 24*. The opt-in notice period has expired and 78 current and former ASMs have opted into this lawsuit.[1]

The defendants move for summary judgment because EZPAWN ASMs have been classified properly as exempt. In addition, the defendants move for summary judgment on the plaintiffs' claim for liquidated damages because the decision to classify ASMs was made in good faith. Defendants also move to limit the statute of limitations to two years because the evidence establishes that the defendants did not "willfully" violate the FLSA. Therefore, a two year statute of limitations bars the claims of those individuals who have opted in to the action more than two years after their causes of action accrued. Accordingly, those claims should be dismissed. Moreover, the defendants move to dismiss EZCORP from this lawsuit as it is not a proper defendant to this action because it did not employ any of the plaintiffs to this action. If this court does not dismiss this case in its entirety, the defendants also reserve their right to file a subsequent motion to dismiss the collective action on the basis that the individuals who have opted into the action are not similarly situated.

II.    <u>EZPAWN's Business Operations</u>

EZPAWN is in the retail pawn and short-term loan business with more than 180 locations across Texas. *Declaration of Robert Kasenter at ¶ 1, attached as Exhibit A.* EZPAWN provides convenient solutions to customers in need of short-term cash. *Kasenter Declaration at ¶ 2.* Customers receive these short-term loans either through a pawn loan or a payday loan. *Id.* EZPAWN makes a pawn loan secured by any item of value including jewelry, firearms, electronics, TVs, stereos, tools, musical instruments, and other items. *Id.* Payday loans are short-term unsecured loans that mature on the customer's next pay date generally seven to thirty-

---

[1] Three additional individuals, Debra L. Taylor , Cesar Cazares, and Jacquelyn Griffith have attempted to join the action after the opt-in period. *See Docket Numbers 113, 114 & 115*. As discussed below, these individuals should be dismissed from the action.

seven days after the loan.  *Id.* EZPAWN also sells merchandise that customers do not redeem or which customers sell directly to EZPAWN.  *Id.*  EZCORP is the parent company of EZPAWN. *Kasenter Declaration at ¶ 1.*  All but one of the plaintiffs in this lawsuit all are working or have worked for EZPAWN as Assistant Store Managers (ASMs) since October 30, 2000.[2]

The employees at each retail location include Sales and Lending Representatives (SLRs), Senior SLRs, one or more ASMs, and one Store Manager.  SLRs are primarily responsible for customer service and the processing of customer transactions.  *Kasenter Declaration at ¶ 4, Attachments 1 & 5.*  Senior SLRs perform the same job duties as SLRs and also may open or close the store in the absence of the ASM or Store Manager.  *Kasenter Declaration, ¶ 4, Attachments 2 & 6.* EZPAWN classifies both SLRs and Senior SLRs as non-exempt employees for purposes of the overtime provisions of the Fair Labor Standards Act (FLSA).  *Kasenter Declaration at ¶ 4.*  An evaluation of the job performance of an SLR or Senior SLR includes attendance, customer service, dependability, flexibility, initiative, job knowledge, loss prevention discipline, quality of work, safety, and team work.  *Kasenter Declaration ¶ 11, Attachment 10.*

EZPAWN Store Managers and ASMs have responsibility for the overall operations of each store.  An ASM's job is to assist the Store Manager by ensuring compliance with EZPAWN corporate policies and procedures.  *Kasenter Declaration, ¶ 4, Attachments 3 & 7.*  A comparison between the ASM job description and the Store Manager Job description reveals that the jobs contain very similar duties.  *Cf. Attachments 3 & 7 to Kasenter Declaration with Attachments 4 & 8.*  Both ASMs and Store Managers are responsible for employee training, maintaining EZPAWN's standards of operations, and compliance with EZPAWN's standards regarding customer service and merchandising.  *Id.*  Further, in the absence of the Store

---

[2] Plaintiff Benjamin Bass was promoted from ASM to Store Manager on September 6, 1999 and later terminated on May 11, 2000. *Kasenter Declaration at ¶ 18.*

Manager, an ASM is the manager-in-charge for the store. *Kasenter Declaration, ¶ 4, Attachment 3.*

The role of managers in pawnshops extends beyond that in other retail establishments. *Kasenter Declaration at ¶ 5.* Managerial oversight is of paramount importance in the pawn business because of the highly regulated nature of the industry. *Id.* The Texas Finance Code, Chapter 371, requires licensing of pawnshops and employees and regulates the procedures of the pawn loan. *See* TEX. FIN. CODE §§ 371.101 & 371.156.

In addition to managing the store and ensuring compliance with company policies and procedures, the work of ASMs is not routine and requires the exercise of independent judgment because of the nature of the company's business. *Kasenter Declaration, ¶5.* Each element of the pawn transaction is subject to regulation, including advertising, verification of customer identity by means of acceptable identification, refusal to do business with ineligible persons (e.g., under 18, intoxicated), acceptance of goods, accurate description of goods on pawn ticket (including notation of serial numbers and identifying marks), tagging and storage of pawned items, and consistent recordkeeping. *Id.* Failure to follow legal guidelines in any of the above subjects the employee and the company to revocation of license, and subjects the company to administrative penalties of up to $1000 per violation per day. *Id.* The Office of Consumer Credit Commissioner regulates pawnshops and imposes routine audits of shops. *Id.* Further regulation that heightens the need for managerial authority in the stores are the criminal penalties associated with the receipt of stolen property, pawn ticket disclosures mandated by the Federal Truth in Lending Act, and federal firearms laws. Id.

ASMs also complete paperwork associated with loan activities and government required forms related to firearms and other property. *Kasenter Declaration, ¶ 6.* ASMs spend time

- 4 -

managing the personal property maintained as collateral in the store warehouse. *Id.* The SLRs generally handle sales of merchandise and initial contact with customers regarding loans while ASM's ensure customer satisfaction by addressing customer needs that SLR's cannot handle and resolving complaints. *Id.*

ASMs in many areas attend Monthly Business Reviews (MBRs)[3] each month. *Kasenter Declaration at ¶ 6.* Monthly attendance by ASMs is at the discretion of the Area Manager and is dependent upon several factors, including space considerations, geographic distribution of stores, and management preferences of the Area Manager. *Id.* Even if the ASMs do not attend monthly MBRs, they meet with the Area Managers at least quarterly to discuss store performance and business plans. *Id.* Only management employees, that is, Store Managers and ASMs, participate in regularly scheduled meetings with Area Managers. *Id.*

The ASM is responsible, with the Store Manager, for supervising implementation of EZPAWN policies for retail items. *Kasenter Declaration, ¶ 7.* EZPAWN markets secondhand items. *Id.* Some items, particularly electronics, "age" quickly as new technology emerges. Therefore, the company has determined that a measure of its retail success is determined by discounting items that have been on the shelf a certain number of days. *Id.* ASMs aid Managers in auditing prices of items in the stores and determining that based upon the category of the item and the number of days in inventory, the item is priced in accordance with company matrices. *Id.* EZPAWN evaluates its Store Managers and ASMs based upon specific performance areas including the net revenue of their stores, employee training, shrink, compliance with standards of operation, management skills, and problem solving. *Kasenter*

---

[3] MBRs are monthly meetings held by Area Managers to review business plans with Store Managers. *Kasenter Declaration at ¶ 6.* The purpose of the meeting is to review store performance over the course of the previous month and design a business plan for the coming month. *Id.* New programs and procedures are introduced during the MBRs and the Store Manager or ASM returns to the store to train other employees. *Id.*

*Declaration, ¶ 12, Attachment 11.*

EZPAWN classifies Store Managers and ASMs as exempt employees for purposes of the FLSA. *Kasenter Declaration at ¶ 4.* EZPAWN pays Store Managers and ASMs on a salary basis. *Kasenter Declaration at ¶ 9.* Store Managers and ASMs also receive bonus compensation based on the overall performance of their stores. *Id.* EZPAWN Management employees participate in a bottom-line, profit-driven performance bonus program. *Id.* This program awards management employees, including ASMs, when their actual operating results meet or exceed planned operating targets. *Id.* Profitability under the program is judged by store contribution after cost of capital, or "SC3." *Id.*

III.    Erasmo Reyes' Employment at EZPAWN

The original named plaintiff, Erasmo Reyes (Reyes), became an employee of EZPAWN in 1997. *Kasenter Declaration, ¶ 13, Attachment 12.* EZPAWN first employed Reyes as an SLR. *Id.* In March 2000, EZPAWN promoted Reyes to ASM. *Id.* At his deposition, Reyes testified that the primary motivation for him in becoming an ASM was to get more money. *See excerpts from the deposition of Erasmo Reyes at p. 59, lines 9-10 (attached as Exhibit B).* Reyes further testified that he did not understand that as a salaried, exempt employee he would not receive overtime compensation. *Reyes Dep., p. 60, line 25 to p. 61, line 5.* According to Reyes, earning a salary, as opposed to an hourly wage, simply meant he would receive more money. *Id.* Further, Reyes was under the impression that he would receive some additional compensation should he work more than 45 hours in a week. *Reyes Dep., p. 62, line 9 to p. 62, line 13.* Reyes came to this understanding not because of any representation made by EZPAWN, but because this was the practice of one of Reyes' former employers. *Id.*

Reyes held the position of ASM until January 2001 when he voluntarily stepped down to

Senior SLR because he thought he could make more money from sales commissions than from his salary as an ASM. *Kasenter Declaration, Attachment 12 and Exhibit B, p. 80, lines 2-13*. In March 2002, Reyes accepted a promotion to ASM because, as Reyes stated at his deposition, he "tried to stay where the money was going to be at." *Reyes Dep., p. 80, lines 7-15*. Reyes continued as an ASM until October 2003 when Reyes, upset that he was not considered for the Store Manager position, resigned. *Reyes Dep., p. 147, line 13 to p. 149, line 25*. Immediately after his resignation, on October 17, 2003, Reyes signed a consent to become a party-plaintiff in this action against EZPAWN and its parent EZCORP. *See Consent Form attached to Plaintiff's Original Complaint*. On October 31, 2003, Reyes filed a Complaint seeking damages for overtime purportedly owed him due to EZPAWN's alleged misclassification of him as an exempt employee. *Plaintiff's Amended Complaint at ¶¶ 5 & 7*.

IV.   Compensation Structure for Assistant Store Managers

As a member of management, ASMs are exempt, salaried employees. *Kasenter Declaration at ¶¶ 4 & 9*. The EZPAWN Employee Handbook states:

**3.4 Overtime Pay**

...**Only nonexempt associates qualify for overtime pay.**  If you qualify as a manager, executive, or professional associate in accordance with state or federal wage and hour laws, you may be exempt from overtime pay and not subject to this policy.

*Kasenter Declaration, ¶ 14, Attachment 13* (emphasis in original).  At his deposition, Reyes claimed that he did not know what "exempt" meant. *Reyes Dep., p. 61, lines 21-25*. However, Reyes signed an acknowledgment stating that he had received a copy of the Employee Handbook and agreed to read and copy with its terms. *Kasenter Declaration, ¶ 15, Attachment 14*. Further, Reyes admitted that a copy of the Employee Handbook was available to him to read while he was employed at EZPAWN. *Reyes Dep., p. 144, lines 6-10*.

At his deposition, Reyes acknowledged that he understood that his bonus compensation was dependent upon the performance of his store. *Reyes Dep., p. 147, lines 6-9.* Further, Reyes also expressed frustration because he knew that other assistant managers were receiving bonus compensation. *Reyes Dep., p. 84, lines 12-19.* However, during Reyes' tenure as an ASM under the SC3, his store never was profitable. *Kasenter Declaration, ¶ 10, Attachment 9.* Reyes admitted that the reason why he never received commission was the failure of his store to meet its revenue goals. *Reyes Dep., p. 84, lines 12-19 and p. 85, lines 5-12.*

V.    Department of Labor Investigation Regarding the Proper Classification of ASMs

In 2000, the Department of Labor (DOL) performed an investigation into whether EZPAWN had properly classified its Assistant Store Managers as exempt under the FLSA. *Kasenter Declaration at ¶ 17; Declaration of Raymond A. Cowley at ¶ 1, attached as Exhibit C.* The DOL allowed the exemption and closed its file without taking any action against EZPAWN. *Cowley Declaration, Attachments 2 & 3.* As a result, the defendants had objective reasons to believe that their classification of ASM's as exempt was appropriate.

SUMMARY JUDGMENT EVIDENCE

EZPAWN relies upon the pleadings on file with the court and incorporates by reference and relies upon the following summary judgment evidence attached hereto:

- Exhibit A:    Declaration of Robert Kasenter with the following attachments:

  1. Job Description for EZPAWN Sales and Lending position dated February 25, 1995.
  2. Job Description for EZPAWN Senior Sales and Lending position dated February 23, 1995.
  3. Job Description for EZPAWN Assistant Store Manager dated August 2000.
  4. Job Description for EZPAWN Store Manager dated August 2000.
  5. Job Description for EZPAWN Sales and Lending position dated August 16, 2004.
  6. Job Description for EZPAWN Senior Sales and Lending position dated August 16, 2004.
  7. Job Description for EZPAWN Assistant Store Manager dated August 16, 2004.

- 8 -

       8.     Job Description for EZPAWN Store Manager dated August 16, 2004.
       9.     Erasmo Reyes SC3 monthly statements as an ASM.
      10.    SLR Evaluation for Erasmo Reyes.
      11.    ASM Evaluation for Erasmo Reyes.
      12.    Employment Summary for Erasmo Reyes
      13.    Excerpt from EZPAWN Associate Handbook containing overtime policy.
      14.    Handbook Acknowledgment form signed by Erasmo Reyes.
      15.    List of Opt-in Plaintiffs.

- <u>Exhibit B</u>:    Excerpts from the deposition of Erasmo Reyes.

- <u>Exhibit C</u>:    Declaration of Raymond A. Cowley with the following attachments:

      1.     Letter dated December 4, 2000 from Raymond A. Cowley to Kristin Furnish of EZCORP.
      2.     Letter dated November 29, 2000 from Raymond A. Cowley to Juan Garcia of the Department of Labor.

- <u>Exhibit D</u>:    Declaration of Lucas Anderson dated June 18, 2004.

- <u>Exhibit E</u>:    Declaration of Janet Andrade dated June 9, 2004.

- <u>Exhibit F</u>:    Declaration of Eloy Arredondo dated June 9, 2004.

- <u>Exhibit G</u>:    Declaration of Linda Arriola dated June 18, 2004.

- <u>Exhibit H</u>:    Declaration of Mirella Aviles dated June 4, 2004.

- <u>Exhibit I</u>:    Declaration of Angela Connerly dated June 19, 2004.

- <u>Exhibit J</u>:    Declaration of Davalene Cowan dated June 16, 2004.

- <u>Exhibit K</u>:    Declaration of Gonzalo De La Rosa dated June 17, 2004.

- <u>Exhibit L</u>:    Declaration of Rigoberto Deleon dated October 6, 2004.

- <u>Exhibit M</u>:    Declaration of Enrique Esquivel June 24, 2004.

- <u>Exhibit N</u>:    Declaration of Noella Esquivel dated June 5, 2004.

- <u>Exhibit O</u>:    Declaration of Gilbert Galvan dated June 9, 2004.

- <u>Exhibit P</u>:    Declaration of Alejandro Garcia dated June 9, 2004.

- <u>Exhibit Q</u>:    Declaration of Dominic Garza dated June 25, 2004.

- <u>Exhibit R</u>: Declaration of Ruben Guajardo dated June 8, 2004.

- <u>Exhibit S</u>: Declaration of Joseph McCarnish dated June 17, 2004.

- <u>Exhibit T</u>: Declaration of Kenneth McCauley dated June 4, 2004.

- <u>Exhibit U</u>: Declaration of Dan Mendez dated June 23, 2004.

- <u>Exhibit V</u>: Declaration of Johnny Moron dated June 18, 2004.

- <u>Exhibit W</u>: Declaration of Rose Perez dated June 8, 2004.

- <u>Exhibit X</u>: Declaration of Cassandra Robinson dated June 18, 2004.

- <u>Exhibit Y</u>: Declaration of Martha Salinas dated June 8, 2004.

- <u>Exhibit Z</u>: Declaration of Aida Segura dated July 2, 2004.

- <u>Exhibit AA</u>: Declaration of Marcos Tellez dated June 8, 2004.

- <u>Exhibit BB</u>: Declaration of Lori Villafuente dated June 25, 2004.

ARGUMENT AND AUTHORITIES

I.    <u>EZPAWN Assistant Store Managers Qualify for Exempt Status Under the FLSA</u>

The FLSA requires employers to pay their employees overtime pay for any time worked over forty hours in a week. 29 U.S.C. § 207(a)(1). However, an employee need not be paid overtime for hours worked over forty in a week if the employee is "employed in a bona fide, executive, administrative, or professional capacity" as defined by regulations promulgated by the Secretary of Labor. 29 U.S.C. § 213(a)(1). The regulations defining the scope of the executive and administrative exemptions require that the employee meet a **salary test** and a **duties test**.

A.    *The EZPAWN ASMs Meet the Salary Test for Exempt Status.*

The current regulations require a minimum salary of $455 per week to maintain exempt status. 29 CFR §541.100(a)(1)(executive); 29 CFR §541.200(a)(1)(administrative). The regulations in effect prior to August 23, 2004 used a short test and a long test. Under the short

- 10 -

test applicable to this matter, the employer had to pay the employees a minimum of $250 per week. 29 CFR. § 541.1(f); 29 CFR § 541.2(e). EZPAWN pays current employees the required minimum under the current regulations and at all times applicable to this matter paid ASMs the minimum salary for the short test to apply prior to August 23, 2004. *See Kasenter Declaration at ¶ 9.* As a result, the defendants meet the first part of the test for exempt status.

      B.    *EZPAWN's ASMs Meet the Duties Test*

EZPAWN's ASMs qualify for the executive and administrative exemptions under the FLSA, as defined by the regulations issued by the Department of Labor (DOL) and applicable case law. As set forth below, the summary judgment evidence attached to this motion establishes that the company properly classifies the ASMs as exempt employees under the administrative and/or executive exemptions because ASMs perform exempt work as their primary duty.

      1)    ASMs PERFORM EXEMPT ADMINISTRATIVE DUTIES

The administrative exemption requires work directly related to the management or general business operations of the company including performing work "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 CFR § 541.201(a). This work includes work in functional areas such as finance, accounting, budgeting, quality control, purchasing, procurement, advertising, marketing, personnel management, and similar activities. 29 CFR § 541.201(b). The administrative exemption requires that the primary duty the employee performs is office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and whose primary duty includes the exercise of discretion and

independent judgment with respect to matters of significance. 29 CFR § 541.200(a)(2)-(3). The prior regulations also contained a short test applicable to the administrative exemption. Under this test, an employee qualified for the administrative exemption where employee (1) performed office or non-manual work directly related to management policies or general business operations of the employer or the employer's customers including (2) work requiring the exercise of discretion and independent judgment. 29 CFR § 541.2(e). The prior regulations also allowed the combination of exemptions. 29 CFR § 541.600.

The job descriptions that summarize the worked performed by the ASMs show their work is "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." *See Kasenter Declaration, ¶ 8, Attachments 3 & 7.* These duties include handling customer complaints, scheduling non-exempt work assignments, handling financial affairs such as loan drops and loan authorizations for customers, maintaining the warehouse of merchandise, and abiding by and enforcing all EZPAWN's management and business policies. The loan operations require the ASMs regularly to determine whether to loan money on an item or buy it outright, advise customers whether pawn or payday loans are appropriate and advisable to the customer, and market and promote the company's loan products. *Kasenter Declaration at ¶5.* When a customer brings in an item to pawn, EZPAWN employees rely on a pricing matrix to determine how much to loan on the item. *Kasenter Declaration at ¶ 7.* Only a manager on duty may authorize a loan outside the pricing matrix. *Id.* Each of the attached declarations indicate that the ASMs spend a significant, if not a majority of time performing duties that qualify as exempt work. *See Exhibits D to BB.*

A federal judge from Maryland has addressed a situation very similar to the present facts. In *Stricker v. Eastern Off Road Equipment, Inc.,* 935 F. Supp. 650 (1996), the plaintiff

- 12 -

challenged the employer's classification of him as an exempt store manager.  The court found that the store manager did not meet the requirements for the executive exemption because his duties did not involve the supervision of two or more employees on a regular basis, but nevertheless rendered summary judgment because the court determined that the duties met the administrative exemption.  The court referenced the plaintiff's managerial duties as meeting the requirement for the administrative exemption including procurement of inventory, negotiating prices with dealers and purchasers of the store's inventory, cash management, and supervising subordinate employees.  935 F.Supp at 657-58.   The court referenced another case where a district judge in Delaware held that an Office Manager's duties in writing orders, making quotations, preparing invoices, customer relations, supervising another employee, opening and closing the facility when the General Manager was not present, and similar duties was sufficient to support the administrative exemption.  *Stricker*, 935 F.Supp at 658 (*citing Cowan v. Tricolor, Inc.,* 869 F. Supp. 262 (D. Del. 1994), *affirmed without opinion,* 60 F.3d 814 (3d Cir. 1995)). The duties identified in the documents supporting this motion meet these standards. As a result, the EZPAWN ASMs qualify as exempt administrative employees.

      2)     ASMs Perform Exempt Executive Duties

The current regulations for the executive exemption require management work including interviewing, selecting, and training of employees, setting hours of work, maintaining production or sales records, appraising employees' productivity and efficiency, handling employee complaints, disciplining employees, planning work, and similar tasks.  29 CFR § 541.102.  The executive exemption requires that the primary duty of the employee is management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof; who customarily and regularly directs the work of two or more other

employees; and who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 CFR § 541.100(a)(2)-(4). The regulations prior to the August 23, 2004 revision of the exemptions provided for a long test and short test for determining whether an employee fell within an exemption. Under the short test,[4] the executive exemption applied to employees if: (1) the employee's primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof and (2) includes the customary and regular direction of two or more employees therein. 29 C.F.R. § 541.1(f).

The ASM job descriptions demonstrate that the most important duties performed by the ASMs in most stores are executive in nature. These duties include interviewing, managing, and training of store associates, managing the store in the absence of the store manager, compliance with company standards of operations for loan operations and sales, creating and administering work schedules, and similar functions. *See Kasenter Declaration, ¶ 8, Attachments 3 & 7*; 29 CFR § 541.102 The ASMs work in a particular store and thus meet the requirement that the employees manage the enterprise in which the employee is employed or a customarily recognized department or subdivision. 29 CFR § 541.100(a)(2). The ASMs also have the authority to effectively recommend decisions related to non-exempt employees such as hiring, discipline, and firing decisions. The company gives particular weight to these recommendations and follows such recommendations on a regular basis. *Kasenter Declaration at ¶ 3*. Further, as demonstrated in the attached declarations, ASMs regularly supervise 2 or more employees. *See Exhibits K, M, R, S, & Y at ¶ 3; Exhibits F, L, O, P, W, AA, & BB at ¶ 4, Exhibits D, G, H, I, Q,*

---

[4] The short test is applicable because EZPAWN paid the ASMs more than $250 per week during the relevant period. *Kasenter Declaration at ¶ 9*.

*U, V, & X at ¶ 5; Exhibits T & Z at ¶ 6; and Exhibit J at ¶ 7.*   As a result, the executive exemption supports a finding that ASMs have been properly classified as exempt.

Reyes' complaint alleges that ASMs spent a significant amount of time on non-managerial duties. *See Plaintiff's Amended Complaint at ¶ 20.*  The current regulations make repeated reference to assistant managers of retail operations that support the conclusion that the defendants employees are exempt executives. First, the regulation relating to concurrent duties for executive employees states that "an assistant manager in a retail establishment" may perform nonexempt work but performance of the nonexempt work "does not preclude the exemption if the assistant manager's duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves." 29 CFR 541.106. Similarly, the regulation discussing an employee's primary duty gives an example of an "assistant manager in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register." 29 CFR §541.700(c). Thus, the regulations recognize that assistant store managers typically are exempt employees.

The courts also have found that assistant store managers performing duties similar to the ASMs working for EZPAWN are exempt under the executive exemption. For example, in *Donovan v. Burger King Corporation,* 675 F.2d 516 (2d Cir. 1982), the Second Circuit found that assistant managers at a fast food retail store were exempt executives based on authority virtually identical to EZPAWN's ASMs. The First Circuit agreed with this ruling finding that

Burger King's assistant manager were also exempt executive employees. *Donovan v. Burge King Corporation,* 672 F.2d 221 (1st Cir. 1982). Similarly, a district judge in the State of Washington held in a summary judgment that assistant managers at Shari's Restaurants were exempt executive employees based on their management duties of supervising employees, handling customer complaints, and performing other management functions. *Palazzolo-Robinson v. Sharis Management Corp.,* 68 F. Supp. 2d 1186, 1190 (W.D.Wash 1999).

Closer to home, Judge Lindsay of the Northern District of Texas rendered summary judgment against the claim of a manager of a Sam's Wholesale Club bakery department (a position subordinate to the assistant manager) holding that the plaintiff was an exempt executive based on duties involving the tracking of the departments daily, weekly, and monthly sales, tracking the gross margin of all products sold in the bakery department, using tools of the trade to increase sales through presentation, identifying sales opportunities and plans to increase sales, maintaining appropriate inventory levels, maintaining quality assurance, directing work of bakery employees, making schedules, conducting performance reviews, interviewed and trained new employees, addressed employee grievances and disciplined employees. *Kastor v. Sam's Wholesale Club,* 131 F. Supp. 2d 862, 869 (N.D. Tex. 2001). The attached declarations demonstrate that the EZPAWN ASMs perform these exempt executive duties. *See Exhibits D-BB.* Therefore, the EZPAWN ASMs qualify for the executive exemption.

3) ASMs PERFORM EXEMPT WORK AS THEIR PRIMARY DUTY

Under the current regulations, in order to qualify for exempt status, the "primary duty" of an employee must be the performance of exempt work. This means that the "principal, main, major or most important duty that the employee performs" qualifies as exempt work. 29 CFR § 541.700. If an employee spends more than fifty percent of the time performing exempt work, the

regulations indicate this "will generally satisfy the primary duty requirement." 29 CFR § 541.700(b). The time spent, however, is not the sole test and employees who spend less than fifty percent of their time performing exempt duties may nonetheless meet the primary duty requirement if other factors support such a conclusion." *Id.* The DOL regulations emphasize a number of factors in determining whether exempt duties constitute an employee's primary duty. These factors are: (1) the relative importance of exempt duties as compared with all other types of duties, (2) the amount of time spent performing exempt work, (3) the employees' relative freedom from direct supervision, (4) and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 CFR § 541.700(a). The regulations use a specific example of assistant store managers spending more than fifty percent of their time performing non-exempt work such as running the cash register as nevertheless being entitled to an exemption. 29 CFR § 541.700(c).

The prior regulations included a similar standard and the courts considered very similar criteria in making a determination of primary duty. 29 CFR § 541.103; *Kastor v. Sam's Wholesale Club,* 131 F. Supp. 2d at 866-68; *Stein v. J.C. Penney Company,* 557 F. Supp. 398 (W.D. Tenn. 1983). The prior regulations also specifically stated that the principles stated in section 541.103 related to executive work primary duties also apply to the administrative exemption. 29 CFR § 541.206. An analysis of the "primary duty" factors shows that the EZPAWN ASMs meet the standard for exempt status under the executive and/or administrative exemptions.

a)   <u>Relative Importance of Exempt Work</u>

The exempt duties performed by EZPAWN ASMs constitute their most important duties. The EZPAWN ASM's have their primary duty to perform these types of functions as addressed

in significant detail above and in the attached declarations.

In the Fifth Circuit, the determination of an employee's primary duty is measured by "what [the employee] does that is of principal value to the employer, not the collateral tasks he may also perform, even if they consume more than half his time." *Kastor*, 131 F.Supp.2d at 866. In *Kastor*, the court found significant to the determination of the employee's primary duty the fact that the employee was evaluated on managerial tasks. *Id*. Reyes' testimony in his deposition also demonstrates that exempt work that ASMs performed are and were more important than the non-exempt duties. Reyes' ASM evaluation indicates that EZPAWN expected Reyes to be responsible for managerial duties and specifically held him accountable for such duties. These duties included ensuring that the store attained its Annual Operating Plan, ensuring that new associates complete EZPAWN training, ensuring compliance with EZPAWN's standards of operation, and management skills. *Kasenter Declaration, ¶ 12, Attachment 11*. Each of these areas of evaluation relate to the overall performance of the store. In contrast, when Reyes was an SLR, he was evaluated on his customer service skills, attendance, flexibility and teamwork. *See Kasenter Declaration, ¶ 11, Attachment 10*. These areas of evaluation make the employee accountable for his own performance, not the overall performance of the store. Moreover, EZPAWN implemented the bonus program for Store Managers and ASMs in an effort to create incentives for management to behave like managers and focus on store profitability, not individual compensation. *See Kasenter Declaration at ¶ 9*. The ASM evaluation and management compensation program illustrate that EZPAWN's primary reason for employing ASMs was and is to perform exempt work.. Therefore, this factor weighs in favor of finding that the primary duty of this position is exempt work.

b)     Time Spent Performing Exempt Work

- 18 -

Reyes' primary substantive claim in this lawsuit is that he spent a majority of his time on non-managerial tasks such as selling merchandise. *See paragraph 20 of Reyes' First Amended Complaint*. The defendants do not dispute that the ASMs provide some retail and sales activity, but the primary duty for these employees is performing the executive and administrative functions indicated in the attached declarations.

The ASMs operate the stores in the absence of the store manager. For example, Reyes testified that he worked approximately two days per week when the Store Manager was not scheduled. *Reyes Dep., p. 107, lines 5-8*. Thus, for at least two days per week, Reyes was required to be the manager-in-charge for his store. This certainly was the most important duty that Reyes performed. *See Kasenter Declaration at ¶ 4*. The managerial and administrative duties performed by the ASMs establish that the primary duties of the ASMs is and was exempt work. As a result, the company properly classified the ASMs as exempt employees.

In addition, the DOL's interpretive regulations specifically allow the performance of non-managerial duties along with exempt work:

> For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50% of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. *He will be considered to have management as his primary duty.*

CFR § 541.103 (emphasis added). Importantly, the leading case discussing the exempt status of assistant managers rejected the managerial/nonmanagerial dichotomy by stating: "[O]ne can still be 'managing' if one is in charge, even while physically doing something else." *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982). *The Donovan* court went on to note that "an employee can manage while performing other work... this other work does not negate the

conclusion that his primary duty is management." *Id.*

The attached declarations also demonstrate that in most cases, the EZPAWN ASMs perform exempt work more than 50% of the time. This meets the standard set in the regulations for the primary duty of the employee being exempt work. In the Fifth Circuit, one court has held that even where an employee spends 90 percent of his time on non-managerial work, he still may have management as his primary duty. *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 869 (N.D. Tex. 2001). Even assuming Reyes or other ASMs performed a substantial amount of non-managerial work, those ASMs still had a primary duty to perform exempt work. Furthermore, Reyes continued to have the responsibility to perform his ASM duties including resolving customer complaints,[5] training employees,[6] and resolving disputes between employees.[7] while performing non-exempt work. As a result, the EZPAWN ASM's primary duty was performing exempt work.

c)    <u>Relative Freedom from Supervision</u>

The executive exemption requires the manager to make recommendations that are given particular weight. 29 CFR § 541.105. The administrative exemption requires that the employee have authority to make independent choices free from immediate direction or supervision. 29 CFR § 541.202(c). As stated above, Reyes and other ASMs are in charge of their stores approximately two days per week. When a Store Manager is absent from the store for any reason, whether it be a meeting or lunch, an ASM serves as the manager in charge for the store and has no direct supervisor during that time. *See Kasenter Declaration at ¶ 4 and Attachments 3 & 7.* Thus, even on days where the Store Manager is scheduled, there are portions of the day during which the ASM is in charge of the store. *Kasenter Declaration at ¶ 4.* For example,

---

[5] *See Exhibit B, p. 109, lines 17-19.*
[6] *See Exhibit B, p. 111, line 10 to p. 113, line 6.*
[7] *See Exhibit B, p. 101, line 6 to p. 102, line 8.*

when the Store Manager opens the store and the ASM closes the store there will be time in the evening where the ASM manages the store unsupervised.  *Id.* Therefore, ASM's spend significant portions of the workweek in charge of a store.  Moreover, even when the Store Manager is working in the store at the same time as the ASMs, the ASMs perform duties similar to the duties performed at times when the Store Manager is not present, particularly relating to loan activities.  Because ASMs frequently work without supervision and with independent judgment, this factor weighs in favor of finding that exempt duties are an ASM's primary duty.

Furthermore, the twenty-five declarations from ASM's attached to its motion for summary judgment demonstrate that the ASMs are required, on a daily basis, to exercise discretion in a variety of areas including handling customer complaints, resolving employee disputes, and approving customer discounts and loan amounts. *See Exhibits D-BB.*  Reyes also identified in his deposition a number of situations for which he was required to make decisions as an ASM, including ensuring that daily tasks were accomplished,[8] resolving customer complaints,[9] and addressing employee problems.[10]  Therefore, this factor weighs in favor of finding that EZPAWN ASMs have management as their primary duty.

d)     Salary and Wages as Compared with Non-Exempt Employees

As discussed earlier, unlike non-exempt employees, ASM's are eligible for bonus compensation tied to store's overall performance. *See Kasenter Declaration at ¶ 9.*  Non-exempt employees are compensated by an hourly wage, commission based on their individual sales, and overtime where applicable.  *Id.* A comparison of Reyes' wages as an SLR with his salary as an ASM reveals that he received significantly more compensation as an ASM.  When Reyes stepped down as ASM in January, 2001, his hourly rate was $8.00 an hour (the equivalent of

---

[8] *Reyes Dep. , p. 65, lines 7-12.*
[9] *,Reyes Dep. p. 109, lines 17-19.*
[10] *Reyes Dep., p. 101, line 6 to p. 102, line 8.*

$16,640). *See Exhibit A, Attachment 12.* When he again took a promotion to ASM in March 2002, his annual salary was nearly $20,000—approximately a 20 percent increase. *Id.* These same standards apply to other ASMs. *Kasenter Declaration at ¶ 9.* Therefore, it is evident that EZPAWN provides substantially more compensation to ASMs than non-exempt employees.

        4)    COMBINATION OF DUTIES

It is important to note that the regulations permit combinations of the exemptions to establish the application of exempt status. 29 CFR § 541.708. The regulation on this issue specifically provides that "an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section." *Id.* The comments on the final regulation indicate that the rule allows "tacking" or "combining exempt work which may fall under different subparts of Part 541." *Preamble to Revised Regulations, 69 Fed. Reg. 22190 (April 23, 2004).* This combination rule makes clear that the EZPAWN ASMs meet the standard for exemption from the overtime regulations because of the combination of administrative and executive duties performed by EZPAWN ASMs. Assuming for the purposes of argument only that employees do not meet either exemption independently, the combination of the exemptions is sufficient to establish exempt status. The prior regulations contained a similar provision. 29 CFR § 541.600. As a result, the company properly classified the ASM's as exempt employees and the defendants are entitled to summary judgment on the plaintiffs' claims as a matter of law.

2.    <u>The Department of Labor Investigation Warrants Summary Judgment in Favor of Defendants on the Issue of Willfulness and Liquidated Damages</u>

Reyes claims that defendants' alleged violations of the FLSA were willful and therefore subject to a three year statute of limitations under 29 U.S.C. § 225(a). *See Reyes' First Amended*

*Complaint at paragraph 25.* "To be a 'willful' violation under the FLSA, the employer must have either known or shown reckless disregard for whether its conduct was prohibited by the FLSA... '[W]illful' refers to conduct that is voluntary, deliberate, and intentional, not merely negligent." *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 511 (N.D. Tex. 1988) (internal citations omitted).

In this case, defendants' classification of ASMs as exempt cannot be considered willful because defendants relied on the Department of Labor's 2000 investigation that did not find any violation of the statute in continuing to classify EZPAWN ASMs as exempt. *See Kasenter Declaration at ¶ 17; Cowley Declaration, paragraphs 2 & 3, Attachments 1 & 2.* In *Dalheim*, the court specifically cited the fact that the defendant had relied on a previous investigation of its compensation practices in refusing to find a willful FLSA violation. *See Dalheim*, 706 F.Supp. at 511. Therefore, as a matter of law, defendants cannot be shown to have made a knowing violation of the FLSA. Further, in light of the investigation by the DOL that did not make any finding of improper classification on the position at issue in this case, defendants cannot have recklessly disregarded whether or not their classification of ASM's violated the FLSA. Moreover, the claims of the opt-in plaintiffs should be limited to those ASM's employed by EZPAWN in the preceding two years. The FLSA applies a two year statute of limitations to claims under the statute with a three year limitations period applying only if the plaintiff establishes a willful violation. 29 U.S.C. § 255(a). Because the defendants have demonstrated that they did not willfully violate the statute, the two year limitations period must apply to this matter. *Garcia,* 167 F.Supp. 2d at 1316-17.

The FLSA provides a defense to a liquidated damages claim if the employer took action in good faith with reasonable grounds for believing that the action was proper. 29 U.S.C. § 260.

The defendants have submitted adequate evidence that it acted in good faith. Because defendants' classifications of the ASM's was not willful or taken in reckless disregard of the statutory requirements, the defendants are entitled to summary judgment on the plaintiffs' liquidated damages claim. *Garcia v. Allsup's Convenience Store, Inc.,* 167 F. Supp. 2d 1308 (D. N.M. 2001).

3.     The Statute of Limitations Bars the Claims of Certain Opt-In Plaintiffs

       The opt-in period for the potential members of this collective action ended on June 15, 2005. The limitations period that should apply to those claims is the two year limitations period stated in the FLSA because the defendants did not willfully violate the statute. This court currently has issued an order that the statute of limitations is tolled from March 30, 2004 based solely on the fact that the defendants failed to respond to the plaintiff's motion for tolling. *See Docket Number 25.* The defendants have filed a motion for reconsideration in which they argued that although they inadvertently deleted the email notice of the filing of the motion, their failure to respond should be excused because the plaintiff did not serve the defendants as indicated in his certificate of service and thus he did not comply with his obligations under Rule 5(d) of the Federal Rules of Civil Procedure. *See Docket Number 26.* In addition, the defendants argued that Reyes had no standing to make the motion that he made for tolling because his personal claim was timely and he represented no opt in plaintiffs with untimely claims at the time he filed his motion. *Id.* The FLSA specifically requires that a claim is barred if not commenced within two years and there is no prior example that the defendants could locate of tolling the statute of limitations prior to an actual opt-in by an party plaintiff. 29 U.S.C. § 256. The defendants also agreed to allow tolling from January 15, 2005 to resolve the dispute on tolling. *See Docket Number 92.* The court has not ruled on the defendants' motion for reconsideration at this time.

- 24 -

Even assuming for the purposes of argument that the court denies the defendants' motion for reconsideration, the following individuals' claims do not fall within the two year limitations period based on the March 30, 2004 tolling date because their dates of termination fall before March 30, 2002 and thus, their claims do not accrue within two years of the tolling date:

- John Lopez (terminated December 31, 2000)
- Dolores M.G. Cherizola (terminated January 18, 2001)
- Malcolm L. Golliday (terminated January 22, 2001)
- Anita Goodman (terminated March 27, 2001)
- Carl Seymore (terminated May 11, 2001)
- Rosanna M. Gomez (terminated May 20, 2001)
- Brenda Gomez (terminated August 13, 2001)
- Rudolfo Romo, Jr. (terminated August 14, 2001)
- Claudia Faye Bergeron (terminated August 22, 2001)
- Mercedes Gonzales (terminated on August 24, 2001)
- Mary Lois Boyd (terminated October 8, 2001)
- Kattie V. McIntosh (terminated November 8, 2001)
- Sindy E. Gomez (terminated November 19, 2001)
- Indalecio Maldonado (terminated December 18, 2001)
- Daniel L. Escobedo (terminated January 7, 2002)
- LaTrisia Evette Guidry-James (terminated February 3, 2002)
- James Christian Hanson (terminated February 19, 2002)

*See Kasenter Declaration, ¶ 16, Attachment 15.*

Additionally, Plaintiff Benjamin Bass' claim is also untimely. Bass was an ASM for a brief time in 1999 until he was promoted to Store Manager on September 6, 1999. *See Kasenter Declaration at ¶ 18.* Therefore, Bass's alleged claim accrued well before March 30, 2002 and is thus not timely and should be dismissed. Further, Bass does not qualify for inclusion in the collective action based on the definition contained in the Amended Complaint that included only individuals who have worked as ASMs since October 30, 2000. *See Plaintiff's Amended Complaint at ¶ 7.*

Finally, three individuals should be dismissed from this action for failing to opt-in to the lawsuit by the June 15, 2005 opt-in deadline. Debra L. Taylor signed her opt-in form on June 20,

2005 and it was not filed until June 22, 2005. *See Docket Number 113.* Cesar Cazares' opt-in form, dated June 23, 2005 was not filed until June 27, 2005. *See Docket Number 114.* Jacquelyn Griffith's consent form is dated June 15, 2005, but was not mailed until July 11, 2005, and was not filed with the court until July 13, 2005. *See Docket Number 115.* Therefore, Taylor, Cazares, and Griffith should be dismissed from this action.[11]

### 4.   EZCORP is Not a Proper Defendant in this Lawsuit

EZCORP, one of the two defendants in this lawsuit, also moves for dismissal from the case because it is not subject to liability. The FLSA prohibits failure to pay overtime to non-exempt employees by "employers" as defined by the statute. 29 U.S.C. § 207(a)(1). The statute defines an "employer" as any person including a corporation acting directly or indirectly in the interest of an employer, and an "employee" as any "individual employed by an employer." 29 U.S.C. § 203(d) & (e). EZPAWN employed all of the ASMs involved in this lawsuit. EZCORP is a holding company and not the employer of the plaintiffs who opted into this lawsuit. *Kasenter Declaration at ¶ 1.* As a result, EZCORP should be dismissed from this lawsuit. The defendants do not contest that EZPAWN is a proper party to this lawsuit.

### CONCLUSION

For the foregoing reasons, defendants respectfully request summary judgment disposing of all of the plaintiffs' claims in this matter. In the alternative, the defendants pray that this court dismiss the willful violation claims, the untimely under the applicable statute of limitations, and EZCORP as a party defendant.

---

[11] Opt-in Plaintiff Juan Gonzales' consent form was not filed until June 17, 2005. *See Docket Number 112.* Because the document filed with the court did not contain evidence of when the consent form was postmarked, Defendants cannot ascertain if Gonzales met the deadline of June 15, 2005. Defendants request that the court also dismiss Gonzales' claim should he not be able to provide evidence of compliance with the Court's opt-in deadline.

Respectfully submitted,


/s/ Kerry E Notestine
Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal I.D. No. 2423
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

Of Counsel:
Eve A. Mantell
State Bar No. 24043800
Federal I.D. No. 36257
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

ATTORNEYS FOR DEFENDANTS
EZCORP, INC. AND TEXAS EZPAWN, L.P.

## CERTIFICATE OF SERVICE

I certify that I sent a copy of DEFENDANTS' MOTION FOR SUMMARY JUDGMENT to the following via electronic mail and certified mail, return receipt requested, on July 15, 2005:

Michael A. Josephson
Fibich, Hampton, Leebron & Garth, LLP
1401 McKinney, Suite 1800
Houston, Texas 77010

/s/ Kerry E Notestine
Kerry E Notestine

Firmwide:64970468.5 036759.1003