**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **ERASMO REYES, individually and on** | § | |
| **behalf of all others similarly situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. V-03-128** |
| | § | |
| **TEXAS EZPAWN, L.P.,** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. §216(b)** |
| **Defendant.** | § | |

**Memorandum & Opinion**

Pending before the Court is Defendant Texas EZPAWN, L.P.'s ("Defendant or EZPAWN")

Motion for Summary Judgment (Dkt. #116).  Upon consideration of the motion, the response, and

the applicable law, the Court is of the opinion that the motion for summary judgment should be

granted in part and denied in part as set forth below.

**Factual and Procedural Background**

Defendant is in the retail pawn and short-term loan business with more than 180 locations

across Texas.  Customers can receive short-term loans either through a pawn loan or a payday loan.

Defendant makes loans secured by any item of value including jewelry, firearms, electronics,

televisions, stereos, tools, musical instruments, and other items.  Payday loans are short-term

unsecured loans that mature on the customer's next pay date, generally seven to thirty-seven days

after the loan is made.  Defendant also sells merchandise that customers do not redeem or which

customers sell directly to it.

The employees at each retail location include Sales and Lending Representatives ("SLRs"),

Senior SLRs, one or more Assistant Store Manager ("ASM"), and one Store Manager.  SLRs are

responsible for customer service and processing customer transactions.  Senior SLRs perform the

same job duties as SLRs and may also open or close the store.  Defendant classifies both SLRs and

Senior SLRs as nonexempt employees for purposes of the overtime provisions of the FLSA.  It classifies ASMs and Store Managers as exempt.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact.  *Rushing v. Kansas City*

2

*S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *superceded by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### Discussion

Plaintiff Erasmo Reyes ("Reyes") filed this lawsuit, individually and behalf of others that he alleges are "similarly situated" ("Plaintiffs"). The collective action, brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), alleges that current and former ASMs employed by Defendant during the relevant time period were improperly classified as exempt and are thus entitled to overtime compensation. Plaintiffs also seek liquidated damages, attorney's fees, and costs.

Defendant moves the Court for summary judgment on several different grounds. First, Defendant seeks summary judgment relating to the opt-in Plaintiffs' claims on the ground that they have failed to produce evidence relating to those claims and that Reyes has produced no evidence

3

to establish that he is "similarly situated."  Next, Defendant moves for summary judgment on Plaintiffs' FLSA misclassification claim on the ground that Plaintiffs were properly classified as exempt as a matter of law.  Defendant also claims it is entitled to summary judgment on Plaintiffs' claim for liquidated damages because the decision to classify them was made in good faith.  Defendant further moves to limit the statute of limitations to two years on the ground that the evidence establishes that it did not "willfully" violate the FLSA.  Additionally, Defendant moves to dismiss EZCORP, Inc. from this lawsuit because it did not employ any of the Plaintiffs in this action.  Finally, Defendant moves to dismiss Debra L. Taylor, Cesar Cazares, Jacquelyn Griffith, and Juan Gonzalez because they allegedly attempted to join the action after the expiration of the opt-in period.  The Court will address each argument in turn.

## I.    Defendant's Motion with Respect to the Claims of the Opt-In Plaintiffs

As stated previously, Defendant moves for summary judgment of the opt-in Plaintiffs' claims on the ground that they failed to produce evidence relating to those claims and that Reyes has produced no evidence to establish that he is "similarly situated" such that he could serve as a "class representative."

The Fifth Circuit has recognized two basic methods for making a "similarly situated" determination.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003).  These are the two-step *Lusardi* approach and the spurious class action *Shushan* approach.  *See id.*; *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987).  Though, the Fifth Circuit in *Mooney* found it unnecessary to determine which method is most appropriate, 54 F.3d at 1216, "[i]t is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis."  *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709, at *4 (E.D. La. 2004); *see also Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill.

4

2004) (stating that the majority of courts have employed or implicitly approved the two-step method).

The first step of the *Lusardi* analysis is the "notice stage" at which the district court decides whether to issue notice to potential class members. *See id.* at 1213-214. The court's decision is usually based only on the pleadings and any affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* at 1214. The lenient standard requires only substantial allegations that potential members "were together the victims of a single decision, policy, or plan . . . ." *Id.* at n.8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. 1988)); *see also Theissen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (defining notice stage as requiring "substantial allegations" that plaintiff and putative class members were the victims of a single decision, policy, or plan). The second stage of the inquiry typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally-certified class. *See Mooney*, 54 F.3d at 1214; *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

Although extensive discovery has been conducted and the Defendants have subsequently filed a Motion to Decertify the conditionally certified class, the Court addresses this motion as it was filed in the notice stage of the proceedings. The Court will only consider the evidence accompanying the Defendant's present motion and the Plaintiffs' response. Briefing on the issues of whether the Plaintiffs are similarly situated and whether Reyes is the proper class representative is largely discussed in Defendant's Motion to Decertify the class. Thus, the Court is of the opinion that it is more appropriate to address those issues in ruling on the Motion to Decertify. Accordingly, the Court denies Defendant's motion for summary judgment with respect to the opt-in Plaintiffs at this time. For purposes of Defendant's motion for summary judgment with respect to Plaintiffs'

5

misclassification claim, the Court will focus upon the evidence as it pertains to Reyes' claims.

## II.    Misclassification Claim

### A.    Applicable Law

The FLSA provides a general rule that, unless exempt, any employee who works more than forty hours in a workweek must be paid one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a)(1). However, employers need not pay overtime for hours worked over forty in a week if the employee is "employed in a bona fide executive, administrative, or professional capacity" as defined by regulations promulgated by the Secretary of Labor. *See* 29 U.S.C. § 213(a)(1). As the employer, Defendant has the burden of establishing that Reyes falls within one of these exemptions, all of which are to be narrowly construed against it. *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990).

New Department of Labor regulations governing exempt employee status became effective on August 23, 2004. A number of the allegedly "similarly situated" opt-in Plaintiffs were working for Defendant both before and after the regulations changed and the parties disagree over which regulations govern the case before the Court.[1] The Court has determined that, for purposes of the motion before the Court on Plaintiffs' misclassification claim, Reyes is the only Plaintiff of import. Reyes left Defendant's employment in October 2003.[2] Therefore, the Court will apply the former regulations for purposes of Reyes' misclassification claim.

At all times relevant to Reyes' lawsuit, the Department of Labor set forth two different tests, a "long test" and a "short test," for determining whether an employee falls within the specified exemptions. Specifically, under 29 C.F.R. § 541.0 (2003), *et seq.*, the Secretary of Labor defined

---

[1] *See* Dkt. #116, Ex. A, Decl. of Robert Kasenter, Attach. 15.

[2] *See* Dkt. #132, Ex. 1, Dep. of Erasmo Reyes, 147: 13-14.

the terms executive, administrative, and professional, by setting out "long" tests for employees earning more than $155 per week but less than $250 per week, and "short" tests for employees earning more than $250 per week.  *See id.* §§ 541.1, 541.2, 541.119; *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).  The parties do not dispute that, with certain allowed deductions, Defendant paid its ASMs the minimum salary of at least $250 per week at all times relevant to this lawsuit.[3]  Therefore, the Department of Labor's "short test" is applicable to the facts of this case.

### B.    Eligibility under the Executive Exemption

Under the "short test" for the executive exemption, Defendant must prove (1) that Reyes' primary duty consisted of the management of the enterprise in which he was employed or a customarily recognized department or subdivision thereof, and (2) that Reyes customarily and regularly directed the work of two or more other employees.  29 C.F.R. § 541.1(f) (2003).

Defendant argues that it is entitled to summary judgment because the ASMs' primary duty is management and because ASMs regularly supervise two or more employees.  Defendant asserts that the ASM "job description" indicates that the most important duties performed by the ASMs "in most stores" are executive in nature.[4]  The relevant ASM job description for purposes of this motion, is the one in effect prior to August 16, 2004.  That job description states that ASMs are responsible for, *inter alia*, managing the store in the absence of the Store Manager; ensuring compliance with industry regulations and corporate policies; and creating and enforcing work schedules.[5]  Though such duties are not contained in the job description, Defendant also asserts that ASMs are

---

[3] *See* Dkt. #116, Ex. A, para. 9.

[4] Dkt. #116 at 14.

[5] *See* Dkt. #116, Ex. A, Attach. 3.

responsible for interviewing, managing, and training store associates; ensuring that new associates complete Defendant's training program; ensuring compliance with Defendant's standards of operation; and evaluating employee performance.  Defendant also maintains that ASMs have authority to recommend decisions related to nonexempt employees such as hiring, discipline, and firing.  Reyes argues that management is not the primary duty of ASMs because ASMs spend the majority of their time performing sales and making loans rather than performing management duties.

The current Department of Labor regulations that became effective on August 23, 2004 make clear that courts must focus on actual day-to-day job duties performed by employees rather than general descriptions or characterizations of job duties when making exemption determinations.  *See* 29 C.F.R. § 541.2 (2005).  Section 541.2 states:

> A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.

*Id.*  Though there is no similar single provision in the former regulations, the same concept was still reflected in those regulations.  The Sixth Circuit wrote:

> There is ample statutory and case law authority to support the . . . position that courts must focus on the actual activities of the employee in order determine whether or not he is exempt from the FLSA's overtime regulations. 29 C.F.R. § 541.103, which describes primary duty, states that 'a determination of whether an employee has management as his primary duty must be based on all the facts in a particular case.' In addition, section 541.207(b), which describes the exercise of discretion and independent judgement, notes that 'the term must be applied in the light of all the facts involved in the particular employment situation in which the question arises.' 29 C.F.R. § 541.207(b).  Both of these DOL regulations indicate that the determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions.

*Ale v. Tennessee Valley Authority*, 269 F.3d 680, 688-89 (6th Cir. 2001) (citation omitted). Therefore, Defendant cannot rely solely on its general job description or the declarations of twenty-five of its non-Plaintiff ASMs to prevail on summary judgment in this case.  Similarly, Plaintiffs

8

cannot rely solely upon the depositions of non-Plaintiff ASMs Kenneth McCauley and Mirella Aviles to defeat summary judgment.  Because the Court is only addressing Defendant's motion as it applies to Reyes, the Court must examine Reyes' activities to determine whether he is exempt from the FLSA's overtime provisions.

The Fifth Circuit has determined that an employee's "primary duty" cannot be ascertained simply by applying the "clock" standard that contrasts the amount of time an employee spends on exempt and nonexempt work.  *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866 (N.D. Tex. 2001).  The interpretations of the regulations defining "primary duty" provide that, while "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time[,] time alone . . . is not the sole test." *Dalheim*, 918 F.2d at 1227; 29 C.F.R. § 541.103 (2003).  Defendant relies on the declarations of the non-Plaintiff ASMs to support its contention that ASMs, "in most cases," spend more than 50% of their time performing exempt work.  By contrast, Reyes' primary claim is that he spent the vast majority of his time on nonexempt work.  While time is not the sole test for determining an employee's primary duty, Defendant's lack of specific evidence creates a fact issue as to the amount of time ASMs spent performing nonexempt work.

However, even in cases where an employee spends less than 50% of his time in managerial duties, management may nevertheless be his primary duty if other pertinent factors support such a conclusion. *Dalheim*, 918 F.2d at 1227;  *Kastor*, 131 F. Supp. 2d at 866.  The former regulations listed a number of factors to aid courts in their determination.  29 C.F.R. § 541.103 (2003).  These factors are (1) the relative importance of the managerial duties as compared with other duties; (2) the frequency with which the employee exercises discretionary powers; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages

9

paid other employees for the kind of nonexempt work performed by the supervisor.  *Id.*  The Court will examine these factors in turn.

### 1.    Relative Importance of Managerial Duties

Under the "short test," the employee's primary duty will usually be what he does that is of principal value to the employer, and not the collateral tasks that he may also perform, even if they consume more than half his time. *Dalheim*, 918 F.2d at 1227;  *Kastor*, 131 F. Supp. 2d at 866. Defendant asserts that the exempt duties performed by the ASMs constitute their most important duties.  In response, Reyes argues that there is insufficient evidence that the ASMs' primary duty is management.  Rather, Reyes argues that the ASMs are primarily "involved" in sales and dealing with customers.  The Court understands Reyes' argument to be that ASMs' principal value to Defendant is their work in sales and customer service rather than their work in management.

Defendant relies on *Kastor* in support of its argument.  The Court, however, finds *Kastor* to be distinguishable.[6]  In *Kastor,* the plaintiff filed a lawsuit alleging that the defendant owed him overtime pay for hours worked over forty in a workweek.  *Id.* at 864.  Prior to the filing of the lawsuit, the plaintiff was selected to manage the defendant's bakery department.  *Id.* at 863.  The court found that the plaintiff's principal value to the  to the company was management, *id.* at 867, and therefore granted the defendant's motion for summary judgment.  *Id.* at 869-70.  The court found that the defendant's duties included the following: supervising the department's employees; maintaining the department's inventory; maintaining quality assurance by ensuring that the department met specified standards; addressing shrinkage and sanitation issues; participating in the hiring and firing of employees; training and developing employees; directing the work of employees;

---

[6] The Court notes that Defendant mischaracterizes Reyes argument with respect to *Kastor*.  Reyes did not simply attempt to distinguish *Kastor* solely on the basis of the plaintiff's job title, but also on the basis that he was able to operate independently, without supervision, and without having to seek permission from his superiors.  Dkt. #132 at 24.

and enforcing the defendant's policies and procedures with respect to the bakery department. *Id.* at 866. Reyes does not seem to dispute that he performed the same or similar duties.

However, the *Kastor* court also noted that the plaintiff performed a number of duties that Reyes claims he did not perform. For instance, the court also listed the following duties performed by the plaintiff in *Kastor*: managing the bakery department; using tools of the trade to keep track of sales, to increase sales, productivity and efficiency, to track the gross margin of all products sold, and to project sales of the department's products; maintaining expense controls; interviewing prospective new employees; scheduling employees to ensure appropriate coverage and production; handling disciplinary actions involving employees; and conducting performance evaluations of employees. *Id.* at 866.

Reyes disputes that he managed anything. When asked what kind of responsibilities he had as an ASM, he replied that he really only performed sales and served as "secretary to the manager."[7] There is evidence that Reyes was responsible for making sure tasks assigned by the Store Manager were carried out and that he encouraged other employees to meet their sales goals.[8] There is also evidence that Reyes would tell other employees what they needed to do for the day when he was in charge of opening the store.[9] However, Reyes testified that he did not get any real authority because his job consisted of handing out preassigned tasks and completing jobs created by the Store Manager.[10]

Defendant has not referred the Court to any evidence where Reyes personally kept track of

---

[7] *See* Dkt. #132, Ex. 1 at 46: 5-9.

[8] *Id.* at 94: 13-14; 101: 4-5.

[9] *Id.* at 105: 19-24.

[10] *See, e.g., id.* at 66: 23-25.

sales, productivity, and efficiency.  Rather, it appears that such tasks were the responsibility of the Store Manager and the Area Manager under whom Reyes worked.[11]  The Court recognizes, however, that Reyes did consult with the Store Manager regarding sales *goals*, which he encouraged the salespeople to meet.[12]  Reyes did testify that he was responsible for maintaining some expense controls such as shrink.[13]  With respect to interviewing candidates, Reyes testified at his deposition that he never asked job candidates any questions.[14]  Reyes also testified that it was not his responsibility to ensure that new sales associates completed their training.[15]  He did acknowledge, however, that he did train people how to sell, how to clean merchandise, and–if he first got permission from the Store Manager–how to use the computer.[16]  Reyes further testified that scheduling was never his regular responsibility and that he always had to get approval for any work schedules he created.[17]

The *Kastor* court also addressed the plaintiff's argument that he did not have independent authority to act on certain managerial tasks without first receiving supervisor approval.  The tasks referred to by the plaintiff were:

> That he could not schedule employees to work more than 37.5 hours per week without first receiving supervisor approval; that he could not independently hire or fire employees; that in maintaining the department's inventory, he simply ordered

---

[11] *See id.* at 64: 6-10.  The Court notes that it appears from Reyes' deposition testimony that the title "Area Manager" and "District Manager" can be used to describe the same position. *See id.* at 75: 4-7.

[12] *See id.* at 100: 1 to 101: 5.

[13] *Id. at* 91: 21-25 to 92: 1-7.

[14] *Id.* at 124: 19-23.

[15] *See id.* at 86: 12-17.

[16] *See id.* at 112: 2-18.

[17] *See id.* at 128: 6-18.

items in predetermined quantities according to the store's specifications; that he did not have the authority to increase an employee's rate of pay; that he performed employee evaluations based on the company's defined standards and policies; and that he did not have independent authority to purchase equipment for the bakery or to rearrange the bakery department.

131 F. Supp. 2d at 867.  As noted by the *Kastor* court, the Fifth Circuit has held that final decision-making authority is not necessary to satisfy the primary duty test for purposes of the administrative exemption.  *See id.* (citing *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000)).  Ignored by Defendant, however, the Fifth Circuit applied this qualification to "matters of consequence."  *Id.*  The *Kastor* court applied the same reasoning to the executive exemption test. *Id.*  The court noted that the evidence reflected that the plaintiff only had to seek approval from his superiors one time and that was when he wanted to perform an act beyond the scope of the store's policies.  *Id.* at 868.  By contrast, Reyes testified that though he had "a little bit of responsibility," he could not make a decision by himself, let alone a decision over matters of consequence.[18]  He testified that he could not make decisions for himself "without the manager or the District Manager."[19]

There is evidence to suggest that Reyes never personally disciplined any employees.[20] Regarding employee evaluations, he stated unequivocally that he never assisted the Store Manager and that the Store Manager never asked him for his input.[21]

*Kastor* is also distinguishable in other ways.  For instance, the court found that the plaintiff had written two "Action Plans" designed to address ways in which he could improve both his

---

[18] *Id.* at 63: 19-21.

[19] *Id.* at 63: 21-22.

[20] *See id.* at 126: 1-20; 134: 24-25 to 135: 1-8.

[21] *See id.* at 127: 20-24.

performance as a manager and the operation of the bakery department.  131 F. Supp. 2d at 867.
There is no evidence that Reyes had any such comparable responsibility or opportunity.  In fact,
Reyes testified at his deposition that he did not even know anything about the company operating
plan.[22]

The *Kastor* court further noted that, although the plaintiff claimed that he spent 90% of his
time performing non-managerial tasks, that was not the purpose of his employment and he was only
required to assist with production on an "as necessary" basis.  *Id.* at 866-67.  There is no evidence
in the summary judgment record that Reyes was only required to assist with sales on an "as
necessary" basis.  Defendant asserts that it expected Reyes to be responsible for managerial duties
and specifically held him accountable for such duties on his evaluation form.[23]  Despite this assertion,
Reyes' deposition testimony leads the Court to believe that he may not have had significant
responsibility with respect to a number of the duties upon which he was evaluated.

The *Kastor* court also noted that the plaintiff was the person on whom the defendant relied
to enforce its corporate policies.  131 F. Supp. 2d at 867.  One court has held that "[e]nsuring that
company policies are carried out constitutes the 'very essence of supervisory work.' "  *Donovan v.
Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) (quoting *Anderson v. Federal Cartridge Corp.*,
62 F. Supp. 775, 781 (D. Minn. 1945), *aff'd*, 156 F.2d 681 (8th Cir. 1946)).  Based upon Reyes
deposition testimony, the Court believes there to be a material question of fact as to the extent which
Defendant actually relied upon Reyes to enforce its corporate policies.  Granted, the Court does not
dispute that Reyes was in charge of making sure tasks assigned by the Store Manager were
accomplished.  However, it is unclear to what extent those tasks involved corporate policies as

---

[22] *Id.* at 84: 25 to 85: 2.

[23] See Dkt. #116, Ex. A, Attach. 3.

opposed to the personal agenda of the Store Manager.

Finally, Defendant asserts that ASMs "in many areas" attend Monthly Business Reviews ("MBRs") that are held every month. However, it notes that attendance by ASMs is at the discretion of the Area Manager and is dependant upon several factors, including space considerations, geographic distribution of stores, and the management preferences of the Area Manager. Defendant also asserts that ASMs who do not attend the monthly MBRs still meet with Area Managers at least quarterly to discuss store performance and business plans. The Court has some concerns finding that management is the duty performed by ASMs that is of principal value to Defendant, when some ASMs do not attend MBRs. Nonetheless, Defendant has not pointed the Court to any evidence that Reyes ever attended this meeting or that he ever met with his Area Manager to discuss store performance and business plans. The Court's reluctance to draw such a conclusion is heightened by Reyes' testimony that he did not even know anything about the company operating plan.[24]

Due to apparent gaps in the summary judgment evidence, the Court is unable to conclude that the most important duty Reyes performed for Defendant was management.

### 2.    Frequency with Which Reyes Exercised Discretionary Powers

In his response to Defendant's motion for summary judgment, Reyes repeatedly argues that ASMs regularly perform nonexempt duties. One of the leading cases discussing the exemption status of assistant managers makes clear that "one can still be 'managing' if one is in charge, even while physically doing something else." *Donovan*, 672 F.2d at 226. Thus, it is not dispositive that Reyes or other Plaintiff ASMs performed the same duties as employees who have been classified as nonexempt. Defendant, on the other hand, states that whether an employee spends a majority of his or her time performing nonexempt work is not the standard for exempt status and also states that the

---

[24] *See* Dkt. #132, Ex. 1 at 84: 25 to 85: 2.

issue of time is not relevant to the determination of whether ASMs are exempt.[25]  However, both the current and the former regulations clearly provide/provided for the amount of time spent performing exempt work.[26]  *See* 29 C.F.R. § 541.700(a) (2005); 29 C.F.R. § 541.103 (2003).  The former regulations state that the frequency which employees exercise discretionary powers is a factor in determining whether or not their primary duty is management.  29 C.F.R. § 541.103 (2003).  Accordingly, the Court will need to address timing as part of this factor.

Reyes argues that there is no evidence that he routinely and regularly performed executive functions.  The Court agrees.  In his deposition Reyes admitted that he worked the equivalent of two days per week when no Store Manager was present.[27]  Granted, when the Store Manager was absent, Reyes was the "manager-in-charge" of the store.  Defendant appears to argue that the hours Reyes was in charge of the store are enough to satisfy its burden with respect to the primary duty element. The Court cannot agree with this assessment.  Courts that have found the frequency factor in favor of defendants have based their decision on significantly more than an assistant manager being solely in charge of the store for two days.  *See Jackson v. Advance Auto parts, Inc.*, 362 F. Supp. 2d 1323, 1334 (N.D. Ga. 2005) (finding that plaintiffs worked without supervision for a majority of their working times and thus were in charge of their respective stores during those times); *Donovan*, 672 F.2d at 223 (finding that, with the exception of brief periods of overlap and weekends, only one of the three salaried employees was on duty at any one time); *Kastor*, 131 F. Supp. 2d at 868 (finding that plaintiff operated the bakery on a daily basis without much, if any, interference from his immediate supervisors or general manager); *Donovan v. Burger King Corp.*, 675 F.2d 516, 522 (2d

---

[25] *See* Dkt. #139 at 7, 12.

[26] In addition, despite Defendant's assertions to the contrary, in discussing the second factor it uses the heading "Time Spent Performing Exempt Work."

[27] *See* Dkt. #132, Ex. 1 at 107: 5-8.

Cir. 1982) (finding that assistant managers were solely in charge of their restaurants "for the great bulk of their working time").

Defendant also argues that the declarations it submitted in support of its motion for summary judgment contain numerous references to the amount of time spent on exempt duties.  It cites as an example the declarations of ASM Linda Arriola ("A majority of my time is spent managing employees"); ASM Angela Connerly ("I am continually responsible for every aspect of the store"); and Enrique Esquivel ("100% of my time is spent managing").[28]  These vague assertions are not adequate to satisfy Defendant's burden of production with respect to the second factor.  Moreover, none of the evidence submitted by Defendant specifically addressed the amount of time or the frequency that Reyes actually exercised discretionary powers.

In addition, regardless of the amount of time Reyes spent as manager-in-charge of the store, he testified that he spent the majority of his time making sure tasks on a list provided by the Store Manager got accomplished.[29]  A significant point in the *Kastor* court's decision in favor of the defendant was the fact that the evidence established that the plaintiff clearly had to exercise discretion in managing the bakery.  131 F. Supp. 2d at 868.  Reyes testified that he would often call the Store Manager for approval and to answer various questions.[30]  Based upon the summary judgment evidence, it is unclear how frequently Reyes exercised discretionary powers.

### 3.      Reyes Relative Freedom from Supervision

Another significant point relied upon by the *Kastor* court was the fact that the plaintiff operated the bakery on a daily basis without much, if any, interference from his immediate

---

[28] *See* Dkt. #116, Ex. G, para. 5; Ex. I, para. 5; Ex. M, para. 5.

[29] *See* Dkt. #132, Ex. 1 at 66: 15-25; 67: 19-25.

[30] *See, e.g., id.* at 108: 1-11; 109: 6-16; 110: 3-7.

supervisors or the defendant's general manager.  131 F. Supp. 2d at 868.  Defendant argues that ASMs frequently work without supervision and with independent judgment both when Store Managers are present in the store and when they are not.  Reyes, however, testified that the Store Manager and the Area Manager consistently oversaw his work performance.  For instance, Reyes testified that he was hardly ever in the store by himself and even when he was by himself and the Store Managers were off duty, they would still call into the store to inquire about how business was progressing.[31]  The Court believes there is a material question of fact with regard to the extent that Reyes enjoyed freedom from supervision during the period in which he is seeking overtime compensation.

### 4.  Comparative Wages

It is undisputed that exempt and nonexempt employees are compensated differently.  When Reyes stepped down as an ASM in January 2001, he was earning $8 an hour, or the equivalent of $16,640 a year.[32]  When he took another promotion to ASM in March 2002, his salary was close to $20,000, which was an increase of approximately 20%.[33]  Moreover, ASMs such as Reyes are eligible for bonus compensation tied to the store's overall performance.[34]  The fact that Reyes may not have always received this bonus does not change the fact of his eligibility.  There is no evidence in the record that nonexempt hourly employees were eligible for this bonus. Thus, it is evident that Reyes received and/or was eligible to receive more compensation that nonexempt employees.

Based upon the existence of material questions of fact with respect to three of the factors

---

[31] *Id.* at 106: 14-15; 108: 1-5.

[32] *See* Dkt. #116, Ex. A, Attach. 12.

[33] *See id.*

[34] *See* Dkt. #116, Ex. A, para. 9.

discussed above, the Court cannot conclude as a matter of law that management was Reyes' primary responsibility. Because Defendant cannot satisfy the first element of the "short test" for the executive exemption, the Court need not address the issue of whether Reyes customarily and regularly directed the work of two or more other employees. 29 C.F.R. § 541.1(f) (2003).

### C.     Eligibility under the Administrative Exemption

Under the "short test" for the administrative exemption, Defendant must prove (1) that Reyes' primary duty consisted of office or non-manual work directly related to management policies or general business operations of the employer or the employer's customers, (2) which included work requiring the exercise of discretion and independent judgment. 29 C.F.R. §§ 541.2(e)(2), 541.2(a)(1) (2003). In a retail setting, the "directly related to management policies or general business operations" requirement means activities relating to the administrative operations of a business as distinguished from sales work. *Id.* § 541.205(a). The "exercise of discretion and independent judgment" contemplates "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." *Id.* § 541.207(a). Additionally, the phrase "exercise of discretion and independent judgment," "implies that the person has the authority or power to make an independent choice, free of immediate direction or supervision." *Id.* In addition, the "exercise of discretion and independent judgment" must be made "with respect to matters of significance." *Id.*; *see also Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). Examples of administrative duties include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *Id.* § 541.205(b).

The former regulations indicate that in determining whether an employee's exempt work satisfies the "primary duty" requirement, the court must apply the factors in 29 C.F.R. § 541.103 (2003). *Id.* § 541.206(b); *see also Vela v. City of Houston*, 276 F.3d 659, 677 (5th Cir. 2001).

However, the Court need not address them because, as discussed below, it finds there to be a genuine issue of material fact with respect to the second part of the "short test" for the administrative exemption. Specifically, there is a question of fact as to the extent of which Reyes performed work requiring the exercise of discretion and independent judgment and the extent to which that discretion and judgment was exercised with respect to matters of significance.

As it did for purposes of its burden with respect to the executive exemption, Defendant relies upon its job description dated August 16, 2004 to support its burden with respect to the administrative exemption. Again, however, the job description in effect prior to August 16, 2004 is the relevant ASM job description for purposes of this motion. That job description states that ASMs are responsible for resolving store associate and customer issues, maintaining inventory, and ensuring legal compliance with state and federal agencies.[35] Defendant also lists other duties in support of its argument that ASMs primary duty consisted of performing "office or non-manual work directly related to management policies or general business operations." 29 C.F.R. § 541.2(a)(1) (2003). According to Defendant, ASMs must determine whether to loan an item or buy it outright; advise customers on loan products; market and promote the company's loan products; and may authorize a loan outside of the company's pricing matrix.

Defendant cites two cases in support of its argument that ASMs qualify for the administrative exemption. *See Stricker Eastern Off Road Equipment, Inc.*, 935 F. Supp. 650 (D. Md. 1996); *Cowan v. Tricolor, Inc.*, 869 F. Supp. 262 (D .Del. 1994), *aff'd without op.* 60 F.3d 814 (3d Cir. 1995). As it does throughout its briefing, Defendant relies upon a list of duties to prove its case. For instance, it asserts in its brief that the *Stricker* court granted summary judgment because the court determined

---

[35] *See* Dkt. #116, Ex. A, Attach. 3.

that the plaintiff's "duties met the administrative exemption."[36]  Defendant correctly points out that the *Stricker* court referenced the plaintiff's managerial duties including procurement of inventory, negotiating prices with dealers and purchasers of the store's inventory, cash management, and supervising subordinate employees.  935 F. Supp. at 658.  However, Defendant seems to ignore the requisite exercise of discretion and independent judgment that the court found to coincide with these duties.  *See id.*  The regulations clearly dictate that courts must examine an employee's actual activities in order determine whether he qualifies for exemption and mere reliance upon general job descriptions is insufficient to satisfy that duty.  *See Ale v. Tennessee Valley Authority*, 269 F.3d 680, 688-89 (6th Cir. 2001); *see also Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) ("Each case must be judged on its own peculiar facts.").

Citing *Cowan,* Defendant asserts that the Delaware district court held that "an Office Manager's duties in writing orders, making quotations, preparing invoices, customer relations, supervising another employee, opening and closing the facility when the General Manager was not present, and similar duties was sufficient to support the administrative exemption."[37]  Defendant again disregards the *Cowan* court's finding that the plaintiff admitted that she exercised discretion and independent judgment.  869 F. Supp. at 264.

In this case, Reyes contests the fact that he exercised any discretion and independent judgment.  He also seems to argue that even if the Court finds that he exercised discretion and independent judgment, he never did so with respect to any matters of consequence.  He asserts that ASMs are closely supervised and the duties they perform are "governed by tightly controlled procedures which require careful adherence" and "self-explanatory procedures and computer

---

[36] *See* Dkt. #116 at 13.

[37] *Id.*

21

programs which remove any discretion from the workplace."[38]  An employee's exercise of discretion is not necessarily diminished by the requirement that he or she adhere to corporate guidelines.  *See Jackson v. Advance Auto parts, Inc.*, 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005) (holding that the fact that plaintiffs had to adhere to certain guidelines does not diminish their discretionary powers); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982) ("The exercise of discretion . . . even where circumscribed by prior instruction, is as critical to [the company's] success as adherence to 'the book.' Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made.").  However, an employer must still produce sufficient evidence to establish that the employee actually exercised discretion.

Defendant asserts that its ASMs and other employees set the prices of the items sold by customers and set the loan amounts customers receive when they pawned items.  Defendant's employees use computer systems to establish these prices.  The systems are called the General Merchandise Assessment System ("GMAS") and a Jewelry Assessment System ("JAS").  Defendant asserts it is undisputed that every time a customer seeks to receive a loan on an item, the employee must use discretion to determine a price based on the suggested range, the condition of the item, and their relationship with the customer.  Defendant argues that ASMs have authority to exercise additional discretion to go beyond the suggested range.  Defendant also asserts that GMAS does not provide employees with a price at which to buy an item from a customer who merely seeks to sell merchandise.  With respect to transactions where customers seek to receive loans on an item, Reyes stated that he would call the Store Manager for approval any time a customer wanted a loan on general merchandise outside the range provided by the computer of more than $5.[39]  He also testified

---

[38] Dkt. #132 at 5.

[39] Dkt. #132, Ex. 1 at 121: 21-23.

that he would always call the Store Manager when a customer wanted a loan beyond the range provided by JAS for a jewelry item.[40]  With respect to transactions where customers seek to sell items outright to the store, Reyes testified at his deposition that, for large items, he always got the Store Manager to approve prices offered by customers.[41]

Looking at all the evidence, the frequency with which Reyes priced items outside of the index range or the extent to which he exercised discretion is unclear.  Additionally, Defendant has produced insufficient evidence for the Court to rule upon whether the setting of prices inside or outside the recommended range was a "matter of significance."  *See* 29 C.F.R. § 541.207(a) (2003).  In short, due to insufficient evidence, the Court is unable to grant summary judgment based upon Defendant's arguments under the administrative exemption.

### D.    Eligibility under the "Combination Exemption"

As an alternative to its arguments under the executive and administrative exemptions, Defendant asserts that, in the event the Court determines that either exemption standing alone is insufficient, ASMs also qualify for the combination exemption.

In addition to the tests solely for executive and administrative exemptions, the former regulations permitted a combination of the exemptions to establish the application of exempt status.  *See* 29 C.F.R. § 541.600 (2003).  In other words, regulations "permit[] the 'tacking' of exempt work under one section of the regulations . . . to exempt work under another section of those regulations."  *Id.* § 541.600(a).  Thus, "employees whose primary duty is neither management nor administration may qualify for a combination exemption based upon both their administrative and management responsibilities."  *Shockley v. City of Newport News*, 997 F.2d 18, 29 (4th Cir. 1993).  Under the

---

[40]   *See id.* at 122: 1-4.

[41]   *See id.* at 117: 5-16; 118: 11-18.

regulations as they existed at the time of Reyes' employment with Defendant, the employer must meet the stricter requirements for both salary and the nonexempt work standard.  *Id.*, 29 C.F.R. § 541.600(a) (2003).  Thus, to qualify for the combination exemption, plaintiffs must satisfy the long tests for both executive and administrative employees, and defendants must demonstrate that no more than 20% of the plaintiff's time was devoted to nonexempt work.  *See Auer v. Robbins*, 65 F.3d 702, 722 (8th Cir. 1995), *cert. granted*, 518 U.S. 1016 (1996); *Shockley*, 997 F.2d at 29.

The Court has determined that there are material questions of fact as to whether Reyes qualifies under the "short test" for either the executive or the administrative exemption individually. Therefore, there are also material questions as to whether Reyes qualifies under the long tests for those exemptions such that he could qualify under the combination exemption.  The Court also notes that Defendant has wholly failed to offer any evidence that Reyes spent less than 20% of his time performing nonexempt activities.

In sum, due to the lack of evidence presented for purposes of this motion with respect to the opt-in Plaintiffs' individual day-to-day activities and the existence of material questions of fact with respect to Reyes responsibilities, Defendant is not entitled to summary judgment on Plaintiffs' misclassification claim on the ground that the Plaintiff ASMs were properly classified as exempt as a matter of law.

## III.  Plaintiffs' Claim for Liquidated Damages and the Applicable Statute of Limitations Period

### A.  Applicable Law

In addressing Defendant's motion for summary judgment with respect to Plaintiffs' misclassification claim, the Court held that whether a Plaintiff qualified for an exemption was dependent upon his or her actual day-to-day activities.  Reyes was the only Plaintiff who had produced any such evidence in response to Defendant's motion and the Court thus focused its

analysis upon Reyes.  The Court applied only the former regulations because Reyes left Defendant's employment prior to the effective date of the current regulations on August 23, 2004.

By contrast, Defendant's motion for summary judgment regarding liquidated damages and the applicable limitations period is not dependent upon individualized analysis as to every Plaintiff. In other words, the Court must analyze Defendant's motions with respect to all Plaintiffs collectively. Therefore, the Court will need to focus on Defendant's actions under both the current and the former regulations.

### B.    Plaintiffs' Claim for Liquidated Damages[42]

Liquidated damages "constitute compensation for the retention of a workman's pay" where the required wages are not paid on time. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); 29 C.F.R. § 790.22 (2003 & 2005). Therefore, liquidated damages are compensatory rather than punitive. *Id.*  In order to avoid liquidated damages, Defendant must show that it had both (1) a subjective good faith belief that it was in compliance with the FLSA when it classified its ASMs as exempt, and (2) that it had an objectively reasonable basis for believing so.  29 U.S.C. § 260; 29 C.F.R. § 790.22 (2003 & 2005); *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 371 (5th Cir. 1987).  The burden is thus on Defendant to prove its affirmative defense.

Defendant moves for summary judgment on Plaintiffs' claims for liquidated damages on the ground that it acted in good faith by relying on the results of an investigation in 2000 conducted by the Department of Labor which found that Defendant did not misclassify its ASMs as exempt and by conducting an in-house investigation in 2004 after the regulations changed.

Evidence regarding the 2000 Department of Labor investigation stems from two sources.

---

[42] The Court notes that, while the regulations regarding exemptions have changed, the former and current regulations regarding the assessment of liquidated damages are unchanged. *See* 29 C.F.R. § 790.22 (2003 & 2005).

First, Defendant presents the declaration of Robert Kasenter ("Kasenter"), Defendant's Senior Vice President of Administration.[43]   In his declaration, Kasenter reports that he was aware that the Department of Labor conducted an investigation into Defendant's classification of ASMs as exempt.[44]   He states in conclusory fashion that the Department of Labor "concluded the investigation without finding that [EZPAWN] misclassified those employees."[45]   He also states that "[we] relied on this investigation in maintaining EZPAWN's ASMs as exempt under the FLSA."[46]

Second, Defendant presents the declaration of Raymond A. Cowley ("Cowley"), Defendant's outside counsel who represented it during the 2000 Department of Labor investigation.[47]   Cowley's declaration contains two attachments.   The first attachment is a letter Cowley wrote to Defendant indicating that he had spoken with the Department of Labor, which decided to close the file.[48]   The second attachment is a letter Cowley sent to the Department of Labor.[49]   This letter was sent because the investigator, Juan Garcia, required Defendant's tax identification number to close its files.[50]   Cowley reports in his declaration that to his knowledge, "the Department of Labor took no further action in this matter."[51]

It appears from the evidence that the Department of Labor's investigation in 2000 was

---

[43] *See* Dkt. #116, Ex. A, para. 17.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *See* Dkt. #116, Ex. C, Decl. of Raymond A. Cowley.

[48] *Id.*, Attach. 1.

[49] *Id.*, Attach. 2.

[50] *Id.*

[51] *Id.*, para. 3.

incomplete.  Defendant has not presented any evidence that the Department of Labor specifically approved Defendant's classification scheme.  Defendant has failed to provide any evidence regarding the scope of the investigation, the issue(s) investigated, or the reason why Defendant was initially being investigated.  Nor has Defendant presented any evidence that it ever retained outside counsel or an FLSA consultant to determine whether its classification was proper.  Defendant is not entitled to summary judgment based solely upon the self-serving statements of Kasenter and Cowley.

With respect to Defendant's claim that it conducted an evaluation of the ASM position in 2004, after the Department of Labor issued new regulations on exempt classifications, Kasenter testified that his evaluation was based upon his experience working in a store during his initial training and conversations with people within the organization and human resources as to what duties ASMs perform.  He admitted, however, that he made his determination without actually conducting the investigation himself.[52]  He also admitted that he never interviewed employees to determine what duties they had.[53]  Nor did he sit down with Store Managers to determine whether ASMs were exercising discretion or independent judgment in the performance of their daily duties.[54]  The Court finds this evidence insufficient to satisfy Defendant's burden of demonstrating subjective "good faith" and objective "reasonable belief."  Therefore, the Court denies summary judgment with respect to Plaintiffs' liquidated damages claim.

### C.    Applicable Statute of Limitations

The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for "a cause of action arising out of a willful

---

[52] *See* Dkt. #132, Ex. 2, Dep. of Robert Kasenter, 12: 15-18.

[53] *Id.* at 12: 19-21.

[54] *Id.* at 12: 22 to 13: 1.

violation." 29 U.S.C. § 255(a); *see also Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 270-71 (5th Cir. 1987).   In order to take advantage of the longer statute of limitations period on their claims, Plaintiffs bear the burden of proving that Defendant willfully violated the FLSA.  *See Herman v. RSR Security Services Ltd.,* 172 F.3d 132, 141 (2d Cir. 1999).   "[A] violation is willful if the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003) (quotations omitted) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Plaintiffs assert that Defendant has "asked the Court . . . to reduce the relevant time period by one year *in reliance* on an incomplete Department of Labor investigation . . . ."[55]  Plaintiffs' arguments regarding the insufficiency of Defendant's evidence with respect to the 2000 Department of Labor investigation and the Kasenter reevaluation of the ASMs' exempt status were persuasive with respect to their claim for liquidated damages.   However, unlike their claim for liquidated damages, Plaintiffs bear the burden with respect to proving a willful violation for purposes of obtaining a longer statute of limitations period.   "Unsupported allegations as to motive do not confer talismanic immunity from Rule 56." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985),  *overruled on other grounds by Price Waterhouse v. Hopkins*,  490 U.S. 228, 238 n.2 (1989).   Therefore, Plaintiffs' attack on the sufficiency of Defendant's evidence is not sufficient to defeat summary judgment. *See Salmons v. Dollar General Corp.*, 989 F. Supp. 730, 735 (D. Md. 1996); *see also International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir.1981) ("The fact that motive is often the critical issue in employment cases does not mean that summary judgment is never an appropriate vehicle for resolution.").   Defendant does not need to rely on any evidence whatsoever.  Rather, Plaintiffs were required to present affirmative

---

[55] Dkt. #132 at 28 (emphasis added).

evidence of Defendant's alleged knowledge or reckless disregard for the FLSA statute and this they failed to do. *See, e.g., Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999) (concluding "the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial"), *superceded by statute on other grounds as noted in Mathis v. Exxon Corp*., 302 F.3d 448, 459 n.16 (5th Cir.2002). Therefore, Defendant is entitled to judgment as a matter of law that it did not willfully violate FLSA, and therefore, Plaintiffs are not entitled to the more favorable three-year limitations period.

The fact that this case is governed by a two-year statute of limitations means that a number of Plaintiffs must be dismissed from this lawsuit. On August 16, 2005, the Court signed an Order in which it determined that the tolling of the statute of limitations began on December 1, 2004.[56] Therefore, the claims of any Plaintiff terminated prior to December 1, 2002 are time barred and those Plaintiffs shall be dismissed from this lawsuit. Because Plaintiff directed its argument to seeking a three year statute of limitations period, there is not adequate evidence to determine which particular Plaintiffs should be time-barred. In accordance with this Memorandum and Order, Defendant should file a motion within fifteen (15) days addressing which Plaintiffs it feels should be dismissed as time-barred. Plaintiffs should respond to such motion within twenty (20) days, in order for the Court to fairly determine which Plaintiffs are time-barred.

## IV.   Defendant's Motion to Dismiss EZCORP, Inc.

Defendant has moved to dismiss EZCORP, Inc. from this lawsuit arguing that it is a holding company and did not employ any of the Plaintiffs in this action and therefore cannot be subject to liability under the FLSA. Plaintiffs filed a Notice of Voluntary Dismissal of EZCORP, Inc. on

---

[56] *See* Dkt. #127.

October 25, 2005.[57]   The Court signed an Order dismissing the claims against EZCORP, Inc. Therefore, Defendant's motion with respect to EZCORP is denied as moot.[58]

**V.     Defendant's Argument with Respect to Plaintiffs Who Opted-in after the Deadline**

Finally, Defendant moves to dismiss Debra L. Taylor, Cesar Cazares, Jacquelyn Griffith, and Juan Gonzalez because they allegedly attempted to join the action after the expiration of the opt-in period.   The Court's Order dated March 16, 2005 regarding notice to potential collective action members, contained a notice form that left blank the date on which the consent forms of ASMs seeking to opt-in were required to be postmarked.[59]   That date was to be filled in by Defendant.[60] Defendant asserts that the deadline was June 15, 2005, and that date is not contested by Plaintiffs.

The consent forms of Debra L. Taylor, Cesar Cazares, and Jacquelyn Griffith were postmarked on June 20, 2005, June 25, 2005, and July 11, 2005, respectively.[61]   Because these consent forms were postmarked after the expiration of the opt-in period, Defendant is entitled to summary judgment with respect to the claims of those Plaintiffs.

Defendant also seeks summary judgment with respect to Juan Gonzalez's ("Gonzalez") claims.  Gonzalez's consent form was signed on June 14, 2005, but it does not contain any evidence of when the consent form was postmarked.[62]   It was not filed until June 17, 2005.[63]   Defendant makes

---

[57] *See* Dkt. #133.

[58] *See* Dkt. #136.

[59] *See* Dkt. #24.

[60] *See id.*

[61] *See* Dkt. #s 113, 114, and 115.

[62] *See* Dkt. #112.

[63] *Id.*

its argument against Gonzalez in a footnote in its motion.[64]  The Court is reluctant to grant summary judgment against Gonzalez without giving him an adequate opportunity to respond to the arguments against him.  Therefore, Gonzalez shall have twenty (20) days from the date of this Memorandum & Opinion to provide proof that he opted into this lawsuit within the prescribed opt-in period.  In the event Gonzalez does not produce such proof within that time period, he shall be dismissed from the lawsuit.

## Conclusion

For the reasons explained above, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (Dkt. #116).

It is so ORDERED.

Signed this 28th day of September, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[64] *See* Dkt. #116 at 26.